IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| BOBBY TATUM, K69478,<br><br>  Plaintiff,<br><br>v.<br><br>DONALD CRAIG, BILLY AUSTIN,<br>DARREN GALLOWAY, KELLEY BEAL,<br>SETH PLOTT, CHRISTOPHER SHERROD,<br>and WILLIAM CHRISTOPHER,<br><br>  Defendants. | Case No. 24-cv-1183-RJD |

**ORDER**

**DALY, Magistrate Judge:**

Plaintiff, currently incarcerated with the Illinois Department of Corrections and housed at Pinckneyville Correctional Center, filed this lawsuit pro se and in forma pauperis on April 29, 2024. Doc. 1. He alleges that various correctional officers at Shawnee Correctional Center ("Shawnee") physically and sexually assaulted him on August 6, 2023 in retaliation for filing grievances and lawsuits. Doc. 12. Following the Court's preliminary review of Plaintiff's First Amended Complaint (Doc. 11) conducted pursuant to 28 U.S.C. §1915, Plaintiff proceeded on the following claims:

> Count 1: First Amendment claim against Defendants Craig, Austin, Galloway, Beal, Plott, Sherrod, and Christopher for assaulting Plaintiff in retaliation for his lawsuits and grievances.
>
> Count 2: Eighth Amendment excessive force claim against Defendants Craig, Austin, Galloway, Beal, Plott, Sherrod, and Christopher for the August 6, 2023 assault on Plaintiff.
>
> Count 3: Eighth Amendment condition of confinement claim against Beal for placing Plaintiff in an unsanitary cell after the assault.

Page **1** of **17**

Doc. 12.  This matter comes before the Court on Plaintiff's Motion to Compel and for Sanctions (Doc. 80), Defendants' Motion to Supplement the Record (Doc. 109), and the Motion for Summary Judgment for failure to exhaust administrative remedies filed by all Defendants (Doc. 84).

## Plaintiff's Allegations Against Defendants

Defendant Galloway was the warden at Shawnee on August 6, 2023; the other Defendants were all correctional officers.  In his Amended Complaint, Plaintiff alleges that on August 6, 2023, he walked by Defendant Galloway on his way to lunch.  Doc. 11, p. 8.  Plaintiff heard Defendant Galloway say that Plaintiff was going "to pay" for filing lawsuits against staff.  *Id*.  After lunch, Defendants Plott and Craig came to Plaintiff's cell and moved him to a different cellhouse.  *Id*.  Upon arriving in Plaintiff's new cell, Defendant Plott and Craig attacked Plaintiff, telling him that Defendant Galloway had directed them to do so because of Plaintiff's grievances and lawsuits.  *Id*.  Defendants Plott and Craig walked Plaintiff down to the gallery where they physically and sexually assaulted Plaintiff as other inmates watched.  *Id*., p. 9.  Defendant Sherrod then helped the other Defendants transfer Plaintiff to segregation.  *Id*., p. 10.  Defendant Beal chose a segregation cell that was covered in blood, feces, and mold; he also prevented a nurse from treating Plaintiff's injuries.  *Id*.  Defendant Sherrod slammed Plaintiff's face into the cell window.  *Id*.

**Plaintiff's Motion to Compel in Opposition to Defendants' affirmative defense and Motion for Sanctions (Doc. 80) and Motion for Reconsideration and for counsel and/or expert witness opinions**

Plaintiff argues that Shawnee Correctional Center failed to preserve "grievance and discovery documents" and that the IDOC altered certain records.  Defendants did not respond to the Motion and the Court set for hearing on the same date as the hearing on Defendants' Motion

Page **2** of **17**

for Summary Judgment for the failure to exhaust administrative remedies. During the hearing, Plaintiff testified regarding the grievances that he submitted that are relevant to this case; Defendants have provided copies of those grievances and associated records. Docs. 84-4 and 109-1.

Plaintiff also claims that IDOC altered a grievance record by stating that the ARB received a document on 10/10/2023 that was actually received on 9/28/2023 and points to a document bates labeled 56 as evidence. Doc. 80, ¶4. The Court notes that the ARB's records reflect that a "return of grievance form" was completed on 10/10/2023 that pertains to a grievance received by the ARB on 9/28/2023 that was bates labeled 56 by defense counsel. Doc. 84-4, p. 34, 35.

Because the grievance records relevant to Plaintiff's claims have been presented to the Court and show no signs that they were altered, Plaintiff's Motion (Doc. 80) is DENIED. However, Plaintiff has already filed a Motion to Reconsider this ruling (Doc. 108); it appears that Plaintiff believes the Court denied his motion in a previous Order because the Court noted that neither Shawnee nor IDOC are Defendants in this case. *See* Doc. 103, p. 2. To clarify, the Court did not rule on Plaintiff's Motion until the instant Order. Plaintiff asks the Court to find Defendants in default and deny their Motion for Summary Judgment because they did not respond to Plaintiff's original Motion to Compel and for Sanctions against Shawnee and IDOC. Plaintiff also asks for counsel and/or expert witnesses so that he can establish that his grievance records were altered. These requests (Doc. 108) are DENIED because Defendants have produced all grievance records to which Plaintiff testified and no evidence suggests those records were altered.

**Defendants' Motion for Leave to Supplement the Record (Doc. 109)**

After the Court set Defendants' Motion for Summary Judgment and Plaintiff's Motion to Compel and/or for Sanctions for hearing, Defendants moved to supplement the record with

additional grievances and records. Doc. 109. Defendants explain that the additional documents were produced to Plaintiff prior to the filing of their Motion for Summary Judgment and are relevant to the arguments made in Plaintiff's response to their Motion for Summary Judgment. Therefore, good cause exists to GRANT Defendants' Motion for Leave.

**Defendants' Motion for Summary Judgment on the issue of Administrative Remedy Exhaustion (Doc. 84)**

Pursuant to 42 U.S.C. § 1997e(a), prisoners are required to exhaust available administrative remedies prior to filing lawsuits in federal court. Inmates who intend to file suit are required to follow all steps and instructions in the grievance process before filing with the Court in order to "[allow prisons] to address complaints about the program [they administer] before being subjected to suit, [reduce] litigation to the extent complaints are satisfactorily resolved, and [improve] litigation that does occur by leading to the preparation of a useful record." *Jones v. Bock*, 549 U.S. 199, 219 (2007).

An inmate in the custody of the Illinois Department of Corrections must first submit a written grievance within 60 days after the discovery of the incident or problem to his or her institutional counselor. 20 ILL. ADMIN. CODE § 504.810(a). The grievance must contain "factual details regarding each aspect of the offender's complaint, including what happened, when, where and the name of each person who is the subject of or who is otherwise involved in the complaint." 20 ILL. ADMIN. CODE § 504.810(c). If more than sixty days has passed since the discovery of the incident or problem, the grievance will still be considered if the inmate can demonstrate good cause for the lapse of time. *Id*. §504.810(a).

If the complaint is not resolved through a counselor, the grievance is considered by a Grievance Officer who must render a written recommendation to the Chief Administrative Officer

— usually the Warden — within 2 months of receipt, "when reasonably feasible under the circumstances." *Id*. §504.830(e). The CAO then advises the inmate of a decision on the grievance. *Id.* An inmate may appeal the decision of the Chief Administrative Officer in writing within 30 days to the Administrative Review Board for a final decision. *Id.* § 504.850(a); *see also Dole v. Chandler*, 438 F.3d 804, 806–07 (7th Cir. 2006). The ARB will submit a written report of its findings and recommendations to the Director who shall make a final determination within 6 months of receipt of the appeal. 20 ILL. ADMIN. CODE § 504.850(d) and (e).

An inmate may submit a grievance directly to the ARB regarding the following issues:

> (1) Decisions regarding protective custody placement, including continued placement in or release from protective custody;
>
> (2) Decisions regarding the involuntary administration of psychotropic medication;
>
> (3) Decisions regarding disciplinary proceedings that were made at a facility other than the facility where the offender is currently assigned;
>
> (4) Other issues that pertain to a facility other than the facility where the offender is currently assigned, excluding personal property and medical issues.

*Id*. at § 504.870(a). The ARB reviews and processes such grievances in the same manner in which it reviews and processes appeals. *Id*. at § 504.870(b).

An inmate may also request that the prison treat his grievance as an emergency "by forwarding the grievance directly to the Chief Administrative Officer." *Id*. at § 504.840(a). The Chief Administrative Officer decides whether there is "a substantial risk of imminent personal injury or other serious or irreparable harm to the offender" and, if so, expedites processing. *Id*. at § 504.840(a)-(b). If the Chief Administrative Officer finds that the grievance does not constitute an emergency, the inmate "shall be notified in writing that he…may resubmit the

grievance as non-emergent, in accordance with the standard grievance process." *Id*. at § 504.840(c).

### *Pavey* Hearing

On June 3, 2025, the Court held a hearing pursuant to *Pavey v. Conley*, 544 F.3d 739 (7th Cir. 2008). Plaintiff testified. Defendants called three witnesses: Lieutenant Brian Banks, Henry Allard, and Margaret Madole. Plaintiff objected that the defense witnesses were a "surprise attack" and he thought the Pavey hearing was "supposed to be on the records." The Court denied Plaintiff's objection, but informed Plaintiff that it would consider whether the witnesses' testimony was a "surprise" to the extent that Plaintiff was unduly prejudiced. Plaintiff questioned all three witnesses. Testimony by Lt. Banks involved recounting his interactions with Plaintiff. Testimony by Henry Allard (clinical services supervisor at Shawnee) and Margaret Madole (Administrative Review Board) involved the grievance process generally, as well as the records of Plaintiff's efforts to exhaust. None of the witnesses testified to a "surprise" event or process that was not addressed in the arguments made by Plaintiff in his opposition (Docs. 86 and 87) and Defendants in their Motion (Doc. 84). Therefore, the Court stands on its decision to overrule Plaintiff's objections to their testimony.

**Plaintiff's testimony**

The undersigned asked Plaintiff when he first submitted a grievance regarding the August 6, 2023 incident. Plaintiff testified that the "first grievance I wrote was August 24, 2023." He submitted it as an emergency and Defendant Galloway ("the defendant who did this stuff to me") found that is constituted an emergency. At the time, Plaintiff was in a "bogus" and "terrible" cell that was covered in feces and blood. Plaintiff never received a response to the merits of this grievance because "[Defendant] Banks came in and threatened me if I didn't drop the grievance I

would have to stay in that terrible cell." The undersigned asked Plaintiff if he submitted another grievance, and he testified "Yes it was 8-28.  It was not deemed an emergency. I read the grievance rules again and sent it to ARB for protective custody.   I put the relief in there and [the ARB] didn't process it according to the protective custody there."   The undersigned asked Plaintiff if, after August 28, he filed any other grievances related to the events of August 6, and Plaintiff said "yes 9-10.   I filed it as an emergency and sent it to Springfield."

Upon questioning by defense counsel, Plaintiff recounted the encounter with Lt. Banks. Plaintiff recalled that Banks pounded on the table and told Plaintiff to withdraw grievance #2023-9-11 (dated August 24, 2023) "if you know what's good for you."   Plaintiff testified that Lt. Banks said that if Plaintiff withdrew the grievance, Lt. Banks would "remove me from that cell and place me in a regular cell and remove my grade reduction. This wasn't a deal it was an ultimatum." Plaintiff then cancelled the grievance, but he testified that he then "doubled back and wrote for protective custody to the ARB" on August 28, 2025.   Plaintiff testified that he also submitted the August 28 grievance at the institutional level and "I didn't care if they killed me…. I kept on filing. I want them to be prosecuted I'm not a homosexual I'm a Christian and they violated my religion." However, after the prison determined the August 28 grievance was not an emergency, Plaintiff "sent it to [the ARB] because that's what the law says."   Lt. Banks never followed through on his promise to move Plaintiff to a regular cell, and Plaintiff testified "that's why I followed through with Springfield."

**Lt. Brian Banks**

For the last six years, Lt. Banks has conducted investigations for Internal Affairs at

Shawnee.  He testified that he interviewed Plaintiff about the alleged staff assault and PREA[1] investigation after Plaintiff submitted a grievance and "[Plaintiff's] interview reflected that he was mad and the grievance was not true… . [Plaintiff] signed the cancellation form. I did not ask him to cancel it."   The interview took place in Internal Affairs.   Lt. Banks did not see the cell in which Plaintiff was living.   He testified that "IA is not typically involved in cell placement…..I did not threaten him or bang on the table.  I did not offer him a grade reduction.  I have never offered that type of deal I don't have the power to do that."   Plaintiff signed the grievance cancellation form while he was still in the Internal Affairs room with Lt. Banks.

Plaintiff then questioned Lt. Banks.  Plaintiff asked Lt. Banks if he followed PREA protocol, and Lt. Banks answered affirmatively.  Plaintiff asked "then why wasn't I put in protective custody with a PREA monitor?" Lt. Banks explained that Shawnee does not have protective custody and that Plaintiff had declined protective custody after learning it would involve a transfer to a maximum-security prison.   Lt. Banks also explained that a person is transferred to protective custody only if the allegations are substantiated.

**Harry Allard**

Mr. Allard has worked as the clinical services supervisor at Shawnee for the last 14 years. He oversees the counseling staff, re-entry programs, and the grievance process.   He is not aware of any staff members withholding, destroying, or losing grievances.   He testified that Plaintiff's grievance #2023-9-11 was received on September 5, 2023 and deemed an emergency.   Lt. Banks was assigned to investigate the allegations in the grievance, but the investigation was cancelled when the grievance was cancelled.

---

[1] The "PREA" is the Prison Rape Elimination Act.

Page **8** of **17**

Mr. Allard testified that Plaintiff submitted an emergency grievance dated August 28, 2023. The grievance was returned to Plaintiff as a non-emergency. Plaintiff did not re-submit the grievance at Shawnee.

Plaintiff asked Mr. Allard whether he was familiar with paragraph 870, the portion of the Illinois Administrative Code that mentions grievances regarding protective custody issues. Mr. Allard testified that he was familiar with that part of the code, and that on the "[grievance] form it states what to do with a grievance that has to do with protective custody."

**Margaret Madole**

Ms. Madole is employed by the Administrative Review Board. She handles statewide grievances that are submitted by inmates. She testified that if an inmate submits a grievance that is missing documentation or outside of the applicable time frame, she uses the "return of grievance form." Department Rule 504 requires her to return the grievance to an inmate if it is not accompanied by a counselor's response and the grievance officer's form. The ARB received two grievances from Plaintiff on September 28, 2023: a grievance dated August 28, 2023 and a grievance dated September 10, 2023. Ms. Madole returned those grievances to Plaintiff because neither grievance was accompanied by a recommendation from the grievance officer or a determination by the Warden. The grievance dated August 28, 2023 also had no response from the counselor.

Plaintiff asked Ms. Madole repeatedly if she was aware of "paragraph 870" and whether he could obtain a direction decision from the ARB on protective custody. Ms. Madole testified that she was *not* aware, but she agreed with Plaintiff that his grievance dated August 28, 2023 includes a request for protective custody. Ms. Madole testified that she returned the grievances to Plaintiff despite the request for protective custody because they were primarily about alleged

staff misconduct.

**Plaintiff's grievance records**

The following instructions were included on the top of the grievance form used by Plaintiff to submit three pertinent grievances:

Complete: Attach a copy of any pertinent documents (such as a Disciplinary report, Search record, etc.) and place in the designated locked receptacle marked "grievance":

> **Counselor**, unless the involves discipline, is deemed an emergency, or is subject to review by the Administrative Review Board
>
> **Grievance Officer**, only if the issue involves discipline at the present facility or issue not resolved by counselor
>
> **Chief Administrative Officer** [Warden] only if EMERGENCY grievance
>
> **Mail to Administrative Review** Board only if the issue involves protective custody, involuntary admission of psychotropic drugs, issues from another facility except medical and personal property issues, or issues not resolved by the [Warden]

Plaintiff's prison and ARB records reflect that he submitted the following grievances relevant to Defendants' exhaustion motion.

**Grievance #2023-9-11, dated August 24, 2023 (Doc. 109-1, pp. 1-3)**

Plaintiff completed the following summary of grievance:

> Please keep the video of this incident here on 8-6-203.  On 8-6-2023 I was excessive force by a number of Joe Doe and John Doe Lt. Officers, Sgt. Officers, and C/o Officers, in which because of my many grievances and lawsuits they wrote a false ticket to cover up their 8th amendment violations to excessive force in which I move from 1-A-cell 33; once I move to two B-Cell 33 the Sgt. John Doe officer told me to hit him on which I try to get out of the way, then he and others John Doe C/O officers [illegible] my left wrist from behind and then [illegible] my right wrist cuff me up. Then run my face head into the glass splitting my right side of my face above my head busting it…then my underwear and pants were pull [illegible] down to my ankles…..The John Doe Lt. C/o Officers said that they were going to teach me for raising grievances and lawsuits on staff [illegible] and then another John Doe Lt. C/ Officer bend my arm

> backwards and told me to talk, and I walk…

Plaintiff then described a sexual assault and that he was placed in a cell.

> Then another John Doe Sgt. C/ Officer came over kick my leg from under me then slam my face into the metal….then another John Doe Lt. Correctional Officer came in and said if I don't drop the lawsuit against Sgt. Williams and Hunter et al. all defendants that the next time they was going to kill and write it up that I had a mental breakdown….I asked a number of times for medical treatment, a nurse wanted to help me but the correctional officers made her leave then I was placed in cell 7 inhumane conditions of confinement…..

> Relief requested: I [illegible] to press charges for sexual assault, excessive force, and unreasonable delay in medical treatment in retaliation for lawsuits and grievances against staff at Shawnee CC. Lt. Bradford for violation of my constitutional rights and impartial decision maker at the ticket hearing and put back in a grade and protective custody in which I ask for before this. This is my grievance.

Plaintiff dated the grievance 8-24-2023 and marked it as an emergency. According to Shawnee records, the Warden's office received this grievance on September 6, 2023. The Warden determined the grievance was an emergency and should be expedited on September 6, 2023. Two days later, Plaintiff signed the grievance cancellation form for this grievance. Lt. Banks also signed the cancellation form.

**Grievance 2023-9-16, dated August 28, 2023 (Doc. 84-4, p. 34-36)**

Plaintiff completed the following Summary of Grievance:

> On video on 8-6-2023, after the Court told the Southern District of Illinois Court Judge in this case to rule on the PLRA, IFP statute, which was on the 8-1-2023 8-2-2023 I was brutally assaulted and sexually harassed by excessive force, slam on my face and underwear pants pull down to my ankles and I believe wrist [is] damaged on 8-6-2023 I have reasonable belief the Sgt. C/o officer Plott was ordered to start a situation with me and damage my right writing wrist, in which I was move to 2B33 from 1-B-33 once I got to 2B33 I [illegible] my t.v. and pillow, bed sheet, ask the Sgt. Plott were to go my box was still outside at the door in which C/o Criag

> who I had [an] active grievance and just drop from a 1983 lawsuit said something to Sgt. Plott who then said "we can have you over here because I like to file lawsuit and grievances on staff then he told me to put all my property in my bag, I turn around to do. Then the Sgt. Plott ran up behind me and grab my left wrist then C/o Criag grab my right wrist but when he grab it he said which wrist was it St. Plott said internal affairs said it was the right wrist which I use to sign to drop a grievance day before internal affairs office on 8-2-2023 I beg them to please stop a number of times leave me [illegible] and Sgt Plott said that Governor Pritzker through Assistant Attorney General Jennifer Powell 0310553 stated that the judges in the Southern District of Illinois cases no. 21-cv-1597-DWD and this one 23-2353 was told by the District Judge no name was mention that this judge told them to tell the Warden to make me go away in which I was cuff push into the glass crack my face blood ran down my face. Then came Lt. Austin Lt. Beal and another John Doe Lt. white shirt officer who then try to break my arms and made sure my pants and underwear was down to my knees and then to my ankles on the way to segunit they kept saying I'm going to pay for filing 1983 suits and grievances and appears in the 7th Circuit last week and that they been waiting a while to f*** me up. Lt Austin stated that Warden Galloway and Lu Walker left but order to make me quiet or disappear in which I ask a number of times to don't do it men both the John Doe Lt. White shirt and Lt. Austin bend my arms up nte wrong way along with Lt. Austin pick me up and same guided my feet while my pants was down then drop me on my right side of my face and [nose] which it hurt so bad I believe it feels broken [illegible] for a second I black out. I begging the [illegible] other John Doe C/o officer to help but they ran away.

Plaintiff then described the sexual assault and that the officers damaged his right wrist because that is the wrist he uses to write. Plaintiff wrote that he was placed into a cell covered with human excrement and denied medical treatment.

> Relief Requested: "place back in [illegible] grade [illegible] and you won't hear another word promise or I want to press charges and be paid for all these constitutional violations [illegible] and release to house arrest ASAP please save on the video on 8-6-2023 from 11:00 a.m. and to 6:30 p.m. from 2 house the walk to seg and seg unit and the feces and [] cell S1-cell 01 I like to be placed in protective custody away from these crazy staff IDOC Shawnee cc.

Plaintiff signed the grievance on August 28, 2023 and submitted it as an emergency. On September 6, 2023, Warden Galloway found that it was not an emergency and that it should be submitted "according to standard grievance procedure." The ARB received the grievance on September 28, 2023 and returned it to Plaintiff on October 10, 2023 with instructions to provide the counselor's response and decision by the grievance officer and Warden.

**Grievance 2023-9-77, dated September 10, 2023 (Doc. 84-4, pp. 30-33)**

Plaintiff completed the following Summary of Grievance:

> On 9-6-2023, internal affairs Lt. Banks and I agree that if I sign to drop grievance no. 20239-11 which was sent to him by Warden Galloway that if I do to 9-10-2023 with out trouble and put in to the adjustment committee on 9-10-2023 which I also did that I would get a C-B grade cut which I'm still waiting on. I [am] ready to get out [of these] inhumane conditions received cell 16 with no table black mold on the vent and stop up sink feces smell toilet which the smell makes me sick to my stomach I'm just making sure hold up to his end of deal.
>
> Relief Requested: I like for my C-B grade 30 day cut and to be placed either on 1-3 or 2-B which you will not hear another word from me again thank you very much. God bless. Protective custody transfer ASAP.

Plaintiff signed the grievance on September 10, 2023. According to the prison's stamp, the Warden's office received it on September 12, 2023 and determined it was not an emergency on September 13, 2023. Plaintiff's counselor received it on September 21, 2023 and noted that Lieutenant Banks provided the following response:

> I interviewed Tatum on 9/5/23 and he canceled the grievance. I did not make a deal at any time. Tatum was advised he could submit a request to the C grade committee about his electronics after 30 days and I advised him I am not on C grade committee but I would speak on his behalf during the next meeting if he stayed out of trouble. Tatum was also advised he could submit a request to the warden and adjustment committee about 9 grade reduction. Tatum stated he would rather do his c grade time in receiving instead of 1B.

The counselor instructed Plaintiff to send the grievance directly to the grievance officer. Instead, Plaintiff sent the grievance (including the counselor's response) to the Administrative Review Board. The ARB received the grievance on September 28, 2023 and returned it to Plaintiff on October 10, 2023 with instructions to provide a copy of the grievance officer's response and the Warden's response.

### Discussion

Plaintiff and Lieutenant Banks tell different versions of the events that led to Plaintiff cancelling grievance #2023-9-11. Viewing the evidence in the light most favorable to Plaintiff, the Court assumes that Lt. Banks threatened Plaintiff to withdraw grievance 2023-9-11 and Plaintiff cancelled the grievance because of the threat (and only because of the threat). Nonetheless, the record is clear that except for that one instance, the grievance process was available to Plaintiff. After Plaintiff withdrew grievance 2023-9-11, he continued to submit grievances at the institutional level and to the ARB.

However, Plaintiff did not submit the additional grievances in the sequence required by the prison's administrative rules. He submitted grievance 2023-9-16 as an emergency and then, when Warden Galloway found that it was not an emergency, submitted it directly to the ARB. Plaintiff argued that it was proper for him to submit it directly to the ARB because it was a request for protective custody. The Court disagrees. Grievance #2023-9-16 contains a lengthy narrative with no reference whatsoever to protective custody until the very last sentence in the "Relief Requested" portion. It is as clear to the Court as it was to Ms. Madole with the Administrative Review Board that the grievance involved staff conduct and a desire to proceed with civil and criminal legal proceedings, not a request or denial for protective custody.

Both grievances #2023-9-16 and #2023-9-77[2] contain requests to adjust Plaintiff's grade and a "promise" that if the adjustment was made, "you'll never hear from me again." The requests for protective custody on both grievances were mere afterthoughts. That Plaintiff first submitted these grievances directly to the Warden as emergencies-instead of initially sending them to the ARB to grieve a protective custody decision-further strengthens the ARB's position that the grievances contained issues that were not appropriate for direct review by the ARB. Moreover, paragraph 870 of the regulation allows direct review by the ARB for "*decisions* regarding protective custody placement." *Id*. § 504.870 (emphasis added). The record reflects that no formal decision was reached at Shawnee regarding protective custody placement for Plaintiff.

At the Pavey hearing, Plaintiff repeatedly referred to the requirement that he "grieve to the same people" who took part in the August 6, 2023 assaults. Even if Plaintiff believed exhaustion was futile, the exhaustion requirement nonetheless applied to Plaintiff's claims in this case. *Dole v. Chandler*, 438 F.3d 804, 808-9 (7th Cir. 2006) (internal citations omitted). Moreover, the record reflects that Defendant Galloway was the only person involved in the grievance process who was also allegedly involved in the August 6, 2023 assault. By choosing to submit grievance nos. 2023-9-11 and 2023-9-16 as emergency grievances-and notably, Plaintiff submitted those purportedly emergent grievances more than two weeks after the alleged assault and cell placement-Plaintiff chose Warden Galloway to be the first prison official to review the grievances, as opposed to having a counselor and/or grievance officer (neither of which were part of the August 6, 2023 assault) first investigate Plaintiff's living conditions.

Regardless, Plaintiff did not submit the grievances related to the allegations in this lawsuit

---

[2] Grievance #2023-9-77 does not encompass all the allegations in this lawsuit, focusing instead on the alleged deal struck with Lt. Banks.

Page 15 of 17

in the sequence and manner required by the prison's administrative rules, and summary judgment is therefore appropriate in favor of Defendants. *Id.* at 811. Defendants' Motion for Summary Judgment is GRANTED and Plaintiff's claims against Defendants are DISMISSED WITHOUT PREJUDICE. The Clerk of Court is directed to enter judgment accordingly.

**Plaintiff's Motion to Compel Pavey discovery and for sanctions against Defendants for using perjured testimony (Doc. 114)**

Plaintiff asks the Court to "compel Pavey discovery to support his undisputed facts to overcome Defendants' perjured, false, and misleading testimony." He contends that Lt. Banks committed perjury when he testified at the Pavey hearing. Plaintiff explains that if the Court were to subpoena footage of the August 6, 2023 assault, the Court would find Plaintiff to be a credible witness and discredit Lt. Banks' testimony. In reaching the decision to grant Defendants' Motion for Summary Judgment the Court considered the evidence in the light most favorable to Plaintiff and assumed the version of events to which Plaintiff testified: that Lt. Banks threatened him with continued poor living conditions if Plaintiff did not cancel grievance #2023-9-11 and that Plaintiff cancelled the grievance because of the threat, not because the August 6, 2023 assaults did not occur.

The record reflects that the grievance process remained available to Plaintiff and he continued to utilize it even after Lt. Banks threatened him, but he did not submit a grievance in the sequence required by the prison rules and the Illinois Administrative Code. As explained in more detail above, summary judgment is appropriate in favor of Defendants and Plaintiff's claims against Defendants will now be dismissed without prejudice. Whether Lt. Banks committed perjury does not affect the outcome of this case and therefore Plaintiff's Motion (Doc. 114) is DENIED. Defendants had filed a Motion for Extension of Time to respond (Doc. 119) to

Plaintiff's Motion and that motion is DENIED AS MOOT.

**IT IS SO ORDERED.**

**DATED:** July 1, 2025

*s/ Reona J. Daly*
**Hon. Reona J. Daly**
**United States Magistrate Judge**